Number 16-3196, Messrs. Ferrella and Lurie. Take your time setting up. No hurry. Good morning, your honors. May it please the court, honorable judges of the Third Circuit, Mr. Lurie. My name is Christopher Ferrella and I represent Appellant Taylored Services, LLC. In this matter, I would like to reserve three minutes for rebuttal. That's fine. Thank you. This appeal is about whether the district court committed reversible error in modifying an arbitration award in deciding that a claim was not properly before the arbitrator. Doing so usurped the arbitrator's decision and affected the merits of the decision in contravention of statutory authority. We've all read the briefing, so let's jump right into it, Mr. Ferrella. You call the difference between an affirmative defense and a counterclaim hair-splitting. But isn't that a distinction with a real difference in the law, that one is a claim for relief for which some redress or remedy can be granted and the other is not? They serve different purposes. Affirmative defenses and counterclaims serve different purposes. Yeah. And somebody who comes to court with just an affirmative defense, when a case is dismissed, can't jump up and down and say, hey, I had a counterclaim if they didn't file a counterclaim, right? Because a counterclaim stands as an independent basis for relief, correct? It does stand for an independent basis for relief. So that's a real difference, not technical hair-splitting. It's a real meaningful legal difference, is it not? But not in this case because many times an affirmative defense will carry the day and will win. So you do get affirmative relief as a result of the defense. For example, when you say something is- You don't get affirmative relief. What you get is some counter to a claim that has been made. That's what an affirmative defense does. It stands as a defense against a claim. It doesn't stand as a claim unto itself, does it? It does not, but that's what we have here. Winning on an affirmative defense in this case would also grant us the exact same relief that we asked you because we were asking for relief to having to pay one severance, which we lost on, but also any other benefits or arguments that the claimant was making in the arbitration. So in essence, we believe that it is hair-splitting in a sense because the relief that we were granted- You folks, you had the chance to make a counterclaim, didn't you? You could have gone to the arbitrator. It was covered by the arbitration agreement. You could have made your claim. You could have said there was a breach. You could have asked for some remedy or relief. This wasn't a mystery to you guys. You were well-represented, but none of that happened. That's correct. We raised the issue. So why shouldn't you live with what you did? That seems to be what the other side is saying. The other side seems to be saying they could have done it. They chose not to do it. The arbitrator took what was an affirmative defense, kind of waved a magic wand over it, called it a counterclaim, and started saying you get certain rights associated with it that they didn't ask for and would not have been entitled to, and that can't be the way arbitration works. That's what they're talking about. Even if it's a mistake of law in an arbitration, can you appeal from it to a district court? No, you can't, can you? That's correct, and that's where I was going to go. On the one hand, I still believe that we could have succeeded as an affirmative defense in the exact same relief that was granted by the arbitrator, but to Judge Roth's point, the fact is we believe it was definitely in the scope because it had been argued the entire time, and while it was in the scope of what the arbitrator could decide, the arbitrator's decision as a mistake either of fact or law is not appealable. How about if the arbitrator had said, I think that Taylor has a counterclaim here for Pickett, something new, something different. Computer fraud or something. Yeah, and just said, I'm giving them relief on that too. In that case, Judge, I think we're in a different position. I think if he makes up, because the case law that we've reviewed here, the cases where the modification has been accepted by the courts has been situations where either both parties have agreed that that issue wasn't before the arbitrator. So, for example, in Havoc where the arthroscopic surgery, but... Yeah, we're not talking about the scope here in the sense that I think everybody agrees that had you made a counterclaim, it would be within the scope of the arbitrator's authority. The question that they're pressing, and I'm trying to get you to address, is you can't arbitrate something that isn't actually before the court. So, I take it you're saying it doesn't even matter how we presented it, and it doesn't matter that the arbitrator understood it and knew it to be an affirmative defense. If he decides to treat it as a counterclaim, even though no claim was made, that's only a mistake of law. It's not the creation of a new claim that was not before the court. Correct, and especially in this case because we present, not only we put the other side on notice because in our answer we raised it as an affirmative defense. There was discovery on that case. There was testimony given at the hearing on that issue, and there was legal argument addressing that very issue, whether or not claimant violated the restrictive covenant. So, the issue was before all of the parties, and the arbitrator in that case decided to treat it as a counterclaim, which could be, again, we believe that there's not a distinction because the relief we asked for is the same that came out either as a counterclaim or an affirmative defense. But even if there is a legal distinction and there is an error, the arbitrator is, that decision is not reviewable by the court. Well, it would be if it were. Wouldn't it be reviewable if it were something that could be dealt with separate and apart from the merits? If it could have been separate and apart from the merits, it could be possibly under a modification, yes. Let's talk about that then. I think that was what Judge Roth was saying too. How is this so bound up with the merits that it can't be separated out? Well, it can't be separated because it's really a thinly guised attack on the actual merits because the arbitrator made several decisions, made one decision on severance, another decision on the breach of the covenant. So you're actually attacking the very merits. It's not as if you're modifying either a party name was changed or there was a mathematical error. You're actually going to the exact merits, which is whether or not fees are being paid by both sides, whether or not the covenant has been violated. That's a merit-based decision that the judge made based on the evidence. I mean, the problem you have is that forget arbitration for the moment. When you're in federal court, a judge does not have the authority to convert an affirmative defense into a counterclaim and just can't do it. So what allows an arbitrator to do what a federal judge cannot do? Well, there's two things. One is that an arbitrator comes from contract, right? So if the contract allows an arbitrator to view the evidence in his or her own way, they can actually do that. They're not bound necessarily by those rules. Everybody wants to play by these rules because it's rules we're familiar with. But an arbitrator can make certain adjustments. This arbitrator had a very wide latitude. Section 17 of the contract. Isn't that your best argument, that arbitration shall be the exclusive process for the resolution of any claim, action, dispute, or controversy of any kind or nature, at law or in equity? I mean, that's about as broad as it gets. It is. And we have three sort of points. The contract certainly defines the arbitrator's jurisdiction and scope and what is appealable or not. In fact, the rest of that paragraph, Your Honor, says, and that decision shall not be appealable. But here we are today. How do you distinguish Boundbrook Board of Education then? The court there seemed to say pretty clearly that a claim that an arbitrator decided a legal question not placed before him or her is tantamount to the claim that the arbitrator imperfectly executed the powers. It was just beyond his authority. And there they come forward and say, that's exactly this case. That claim was not before the arbitrator. There was an affirmativeness, but there was no claim. So I distinguish Boundbrook. Absolutely. And it was sort of what we were talking about earlier on in this argument. In Boundbrook, what the arbitrator did there was say, the Boundbrook public schools came forward with charges of unbecoming conduct. And that has a certain criteria that has to be satisfied, and that's what was charged against this teacher. And what the arbitrator said was, this sounds like a sexual harassment case, and applied the law against discrimination, which completely has several different, it has burden shifting, it has different factors, different evidence, and then ruled against Boundbrook by saying, you didn't satisfy those criteria. And Boundbrook said, we didn't charge him with that criteria. Why should we then be held to that criteria? This is different from this case, because in this case, everyone's been on notice that we were saying that he violated the restrictive covenant by holding onto his laptop. That was in our answer. It was in discovery. It was litigated before the arbitrator. And there was legal argument in the briefs on that very issue. It wasn't as if it came out of nowhere. Let me pursue, if I could, for a moment, whether this actually would have played out different if you had made a counterclaim. Assuming for discussion that what you had framed up was a counterclaim, you put in the same evidence, would the arbitrator, I mean, is it a given that if you prevailed on a counterclaim, that there would have been, that the relief for winning a counterclaim would be to, well, I guess my question is, would it offset in some way the monies that were earned by the other side as a result of your client's breach? I think the arbitrator actually addressed that by saying he couldn't find any way to offset in terms of money against the severance. Because there was no evidence. There was no evidence of it. Right. So doesn't that kind of make the point that this wasn't a counterclaim? I don't believe it does, because I think it's as an affirmative defense or even as a counterclaim. A counterclaim could ask for some type of equitable relief from the arbitrator. In fact, as part of the answer, we put in the, this is one of those times where the actual phraseology might come into play, where we say in all other possible equitable considerations by the arbitrator should be considered. And, you know, we put those in sort of as a matter of course, and this may, it actually matters, where we ask for some type of relief. And that relief doesn't necessarily have to be money. It doesn't have to be offset. In this case, what it did was offset rights that the claimant had in the arbitration for further relief beyond severance. And the relief you want in this case is a restoration of the order as the arbitrator handed it down. That's correct. All right. Thank you very much. Thank you, Mr. Lurie. Good morning. If it pleases the Court, Mark Lurie, Greenberg-Krug on behalf of Timothy McHale. As it has been noted, arbitration is fundamentally a creature of contract. An arbitrator's authority is limited solely to those claims that the parties decide that they elect to bring before the arbitrator. As Judge Jordan has noted, the case of Boundbrook decided by the Supreme Court. Did you cross appeal? Excuse me? Did you cross appeal? No, we did not. Why? Why didn't we cross appeal? I'm sorry, you won. I'm sorry. I apologize. I'm thinking backwards. No, no. But there is a question about why you are not satisfied with the arbitrator's award. Why you like what the district court did. Because if this were to go back, aren't you in a position where the arbitrator could say, you know what? I can understand that maybe there was some confusion before, but let's go ahead and treat this as a counterclaim now. And everybody can put their evidence in that they want to put in. And you could end up in a circumstance where there's evidence that undermines or undercuts the award that your clients got. I mean, aren't you putting your client's very nice win before the arbitrator at risk by insisting that this is something that the district court was entitled to put its hands into? No, Your Honor. First, nobody is asking to vacate the order, the arbitrator's decision, granting my client the severance. No, but you're saying that the arbitrator was wrong. You're asserting that the arbitration was wrong. In other words, this sort of has a want my cake and eat it too flavor to it. That you say the arbitrator was wrong, but don't give it back to the arbitrator to try to get it right. We want you to say that the arbitrator was wrong and the district court fixed it so that we get more and walk away from it. Instead of saying, send it back to the arbitrator to get it right. If the arbitrator was wrong, why shouldn't it go back and have the arbitrator do it right? We're not asking for it to be done over. Nobody's asking it to be done over. Well, this is my question. I know you just said nobody's asking for it. I'm asking you, from this court's perspective, if we were to accept your argument that the arbitrator got it wrong, why wouldn't we send it back for the arbitrator to get it right? Instead of giving you what you want and just say, okay, the arbitrator got it wrong. The arbitrator should have a chance to get it right. The only thing which we've asked to have vacated, which the only thing the district court vacated, and the only thing which is on appeal, is that specific portion of the arbitrator's decision. We're talking past each other, Mr. Rory. I know what you're asking. I read your materials. I understand that's what you're asking. What I'm asking you to respond to is, if we accepted your argument that the arbitrator got it wrong, why wouldn't the right answer be, okay, give the arbitrator the chance to do it right? Why isn't that the correct outcome instead of what you're asking for now? Maybe I'm misunderstanding, but the only thing which we're saying, and all parties agree that is in dispute, is whether the arbitrator got right on the counterclaim. Nobody's asking. Nobody's as a result of the district court's decision or the court's decision. But there was no counterclaim, right? There was no counterclaim, so there's nothing to go back to the arbitrator to decide on a counterclaim. But the provision, Section 17, and I'll read it in full this time. Arbitration shall be the exclusive process for the resolution of any claim, action, dispute, or controversy of any kind or nature, in law or in equity, between or among employer or employee, and related to, arising from or otherwise with respect to this agreement or the subject matter thereof. Could you draft something any broader than that? No, I think that's extremely broad. And so if we determine that the arbitrator had the authority to resolve the question of the restrictive covenant, regardless of what you call it, does the district court have any authority to issue a contrary decision on provisions of attorney's fees? Yes. Again, even though the contract claim is broad, the arbitrator still only has the authority to decide those claims that are brought before the arbitrator. Those disputes that are brought before. It says dispute of any or controversy of any kind or nature. It's not just claims. Correct. But again, it's the same as under Boundbrook, which is. But there was evidence on both sides. There was argument on both sides. You can't say that this isn't an entirely new dispute that was found by the arbitrator and pulled in. It was a dispute that was fully contested before the arbitrator, whether keeping the laptop was a violation of what was it, Section 7. The only dispute that was brought to the arbitrator's attention was whether the retention of the laptop deprived Mr. McHale of his right to severance. That is what was argued by the parties. That was what was briefed by the parties. But that's what we want. The basis for that was, well, I guess the basis of that in some measure was still Section 7, right, the restrictive covenant? Correct. But they never claimed under Section 7. Again, they claimed that under the restrictive covenant he was not entitled if he kept the laptop for the severance purposes. That was fully briefed. That we argued that we want. The Jersey failed affirmative defense into a successful counterclaim is an imperfect execution of judgment of their decision under New Jersey NJSA 2A28-4. Mr. Lurie, doesn't New Jersey law say that you have to lay off the arbitrator's decision if you can't modify it without affecting the merits? Correct. In this one, you can modify without affecting the merits. Now, that's something you need to speak to very specifically. You've heard your opponent argue and you've read in his briefs that, as I understand it, the argument is, in effect, the very same things that led the court to decide the prevailing party question are the merits questions. They are the merits issues. You can't tease them apart.  How is it wrong? Sure. The only merits question that was before the arbitrator was whether Mr. McHale was terminated without good cause and was therefore entitled to severance. That is a claim that we prevailed on. That's actually already been paid to get rid of the arbitrator's decision regarding a counterclaim that was never asserted and for which we never had the opportunity to present any defenses does not change the merits of whether or not Mr. McHale was terminated. When you say we never had the chance to present any defenses, I mean, you were there while they were putting on evidence about your client taking the laptop, knowingly holding on to it for a month, and apparently admittedly doing it because he felt he'd been wrongfully terminated and I guess he was resorting to self-help and trying to get some leverage. All that was going on and being said in front of the arbitrator while you or one of your colleagues, somebody representing your client, was there, right? Yes, I was actually there. Okay. Yes, that's correct. So when you say we never had any chance, I mean, you knew the dispute was in front of the arbitrator because they were making it part of the arbitration and you were there while it was happening, right? Yes, and we knew that the dispute was whether or not his retention as a result did not entitle him to severance. If we had known that there was a counterclaim, we would have asserted separate defenses, such as the fact that it had already been brought in the state court, that there was a court in satisfaction, that there was no claim for breach of contract because there was no damages. Well, there was no final decision in the state court because he gave the laptop back anyway. Correct, he gave the laptop back. So that's not binding precedent. Correct, but they could have asserted the claims. We would have argued that they should have and that they relinquished any claims. And again, we thought that any positive claims, affirmative claims regarding the laptop had gone away when that claim was dismissed in the state court. Assume that the conversation had gone just the way you wanted and that the arbitrator had said this is an affirmative defense, but I think it's an affirmative defense that wins. And it's an affirmative defense that wins, but I'm not sure how to assess an offset because they didn't put evidence into that. But it's an affirmative defense that wins. Is it beyond the arbitrator's authority to say on that affirmative defense they prevailed? They are, therefore, a prevailing party. And therefore, I deem it that neither side gets fees. Would you be in exactly the same position coming out of the arbitration as you were when you came out of the arbitration where the arbitrator said it's a counterclaim? At the risk of speaking across each other, if the arbitrator had decided that they prevailed on the affirmative defense, Mr. McHale would have received no severance. He would not have been a prevailing party on any of the claims. Taylor would have prevailed on all claims and Mr. McHale would have owed them. So you really are putting this award at risk. By saying that the arbitrator got it wrong, because that is what you're asserting. The arbitrator just got it wrong in treating the affirmative defense as a counterclaim. If this court were to decide that's true. The arbitrator got it wrong. And the district court wasn't really in a position to modify it because it went to the merits. Therefore, since the arbitrator got it wrong and it can't be modified, it should go back to the arbitrator. Your client could lose it all. Again, we believe that those are very severable claims. But it could be viewed differently and then your client loses everything, right? If it were viewed differently and if it were in a different procedural posture and if Taylor had sought to vacate the entire award. But again, these are very severable claims. But now stick with me. It's possible that the arbitrator could have said they prevail on their affirmative defense, but I don't think that that constitutes a full offset. So I'm letting the award for the breach of wrongful termination stand and I'm letting the consideration that there was a wrongful retention here stand as an affirmative defense in the sense that it shouldn't have happened. And as equitable relief, I'm not giving fees. I'm declaring them a prevailing party. Again, the arbitrator, you're not saying that that would be beyond the arbitrator's powers, are you? No, if they had actually asserted an affirmative claim. If we had lost on the counterclaim. Not a claim, an affirmative defense. In other words, your argument seems to be all about prevailing party. They can't be a prevailing party. And I'm trying to understand if that boils down to just that he used the wrong word. He said counterclaim, but if he'd said affirmative defense, he'd be in exactly the same spot. Isn't that the case? If he had said that it was an affirmative defense and that they had prevailed on their affirmative defense, such that Mr. McHale was not entitled to severance, that would be a very different procedural and substantive posture than we're in today. I agree with that. But that's not what happened. What happened is he took a failed affirmative defense, turned it into a counterclaim that could have been asserted, was not asserted, for which we never had the right to assert any affirmative defenses to that nonexistent counterclaim. And then the arbitrator awarded no damages on a claim that was never asserted because there were no damages. And did it so simply, it appears, to reach a compromise verdict. This was not taking a successful affirmative defense, turning it into a successful counterclaim. Was that an error of law? No, it was exceeding his authority. It was pure and simple exceeding his authority under the statute. Well, if you look at Section 17, he's got huge authority. Correct, but he doesn't have authority to create a claim that was never submitted to him It's a dispute. It was a dispute. It's a dispute about whether the laptop was improperly retained. It was a dispute. And having found that the laptop was improperly detained, then in determining the merits of who ought to get attorney's fees, that was a factor that entered into his decision. And I don't see how it can be changed without modifying the merits of the overall decision. If I may, a couple of things I will say about that. As I mentioned, the overall claim was Mr. McHale's entitlement. But this is not just claims, it's disputes. And it was a dispute as to settlement, as to severance. It was not a dispute. And there was a dispute about whether Mr. McHale improperly kept the laptop. And violated Section 7. It was a dispute as to whether his retention of the laptop deprived him of severance. It was not a claim that there were damages. Well, a factor, an element of that was whether he improperly kept the laptop. And the arbitrator found that he improperly kept the laptop. And that affected the decision on attorney's fees. But it did not affect the decision which was before him, which was about the severance. But it affected the resolution of the disputes that were before him. This is an arbitrator. This isn't a district court. This is an entirely different world. It is. But still, fundamentally, as the Supreme Court of New Jersey recently found in Boundbrook, you cannot take a dispute based upon certain facts and decide to reframe it into a legal claim, a theory that had not been provided by the parties. Fundamentally, regardless of the contract, under the law, the arbitrator can only decide claims as submitted to him and not decide that here's what they should have alleged instead. But they also can decide what is actually presented to the arbitrator as evidence and argument. And in the arbitrator's opinion, he specifically mentioned that a counterclaim was not presented but that he was going to waive his, as Judge Jordan said, magic wand, magically transform this into a counterclaim. And, again, for which we never had the opportunity to present any affirmed defenses to a counterclaim that we had no idea even existed. We knew about the retention of the laptop as a defense, and we prevailed on that. Had we known about others, we would have prevailed, hopefully, on the counterclaim as well, again, because there was no prima facie case without damages, that we understood that this was an accord and satisfaction, that this was beyond the scope of the arbitrator's authority. He cannot simply take a failed counterclaim, turn it into a counterclaim that nobody ever asserted. Clarify something for me, if you would. Mr. McHale was terminated supposedly for a cause, and therefore he wasn't entitled to severance. And the cause that was alleged? The cause that was alleged was that Taylor believed that there may have been undocumented illegal workers in the California facility, and that Mr. McHale knew or should have known that there may have been those undocumented workers. And you didn't prevail on that. But you also said that you brought up at the arbitration that Mr. McHale violated Section 7 by keeping the laptop four months longer than he had any right to. Is that correct? I'm sorry. What was that? At the arbitration, did you also then say that, did you attempt to complement the for cause theory by saying that, in addition, Mr. McHale kept the laptop four months longer than he had any right to? No, that was unrelated. What the arbitration was about was whether or not, by retaining that laptop, he forfeited his right to severance. And what we argued successfully was that Taylor, having breached the agreement, could not now seek to enforce that agreement. And the arbitrator, by the way, agreed with us on that, that as Taylor had breached the agreement, they could not enforce the provision with regard to the retention of the laptop. And then to take that and say that even though they couldn't prevail as an affirmative defense and couldn't enforce the contract, they can now enforce the contract on a counterclaim that they never alleged. And you're now relying on Boundbrook. Boundbrook seems distinguishable because it involves the arbitration provision of a statute, which is much narrower than the contract between the private parties that we had here. That's correct. It did rely upon the statute, but fundamentally, as the Supreme Court noted, that even though there is evidence, for example, in that case, with regard to the fact that it was sexual harassment, you can't take a claim that alludes to sexual harassment and turn it into a sexual harassment claim. But in that case, there's a significant number of public policy concerns. Correct, which the Supreme Court did not rely upon those public policy concerns. It relied on the statutory language of NJSA 2A28-4 to say that an arbitrator exceeds his or her authority by going beyond the claims as presented and recharacterizing them in a way that the parties did not intend. Thank you very much. Thank you. Mr. Farrella. May it please the Court. Part of what Mr. McHale is saying, as well as the district court, it did as well was focus very narrowly on the issue that was presented to the arbitrator. And they insist that it is merely about the wrongful termination. At all times, Taylor took the position that the retention, the unlawful retention of the laptop for four months was an issue, was a dispute between the parties, and that dispute affected. And Mr. Lurie says, and we won on that. We won on that because if we hadn't won on that, we wouldn't have gotten the award we got. It would have meant that their affirmative defense was successful and we wouldn't have gotten anything. So the ruling of the arbitrator was you being Taylor having breached first or not in a position to have that offset or to have that stand as a block to their relief. And having made that decision, the arbitrator could not properly then create a new claim out of whole cloth. So when you say that was before the arbitrator, please speak to Mr. Lurie's point that, yeah, it was before the arbitrator, and he ruled on it, and we won. Well, in the terms of the severance issue, yes, they did win in the severance issue. But what happened was that it was in Section 7. If they won on that in the context of the severance claim, which was the only claim that the record shows was before that arbitrator, why was it proper for the arbitrator to then say, and now I'm going to, in order to decide how to declare a prevailing party and whether fees are to be paid, I'm now going to say there was a counterclaim? Because, first of all, the agreement says that there were disputes. They didn't have to necessarily be limited to a claim. And what the arbitrator then did was say, there are other pieces to this employment agreement that the affirmative defense was successful for. So in the severance piece, it was not successful. But in the other amendments that you get from the employment agreement, such as legal fees, such as being considered a prevailing party, that's where the affirmative defense was successful. It was successful in blunting the payment or the punishment of those pieces of the agreement. Not just on the severance. So I think he split the affirmative defense in a sense. But also as to the affirmative defense, Mr. Lurie mentioned both in the briefing and here that there were these other things they could have done if they knew that this claim was out there. Those same types of procedural maneuvers, such as trying to strike a defense, are applicable. So their conduct should be viewed in terms of either a waiver or at least under the measure of media. How could it be a waiver if nobody ever talked about it in terms of a counterclaim until the arbitrator handed down a decision calling it a counterclaim? How can they be accused of waiving something that you yourself didn't bring up? Because we brought up the issue and the dispute itself. Wait a second. Mr. Lurie, when you say we brought up the issue, yeah, nobody's denying you brought up the issue. You brought it up as an affirmative defense. That's why we're fighting here today. That's what makes this case a little bit challenging, right? You're in a position to say there was a waiver when nobody thought this thing was a counterclaim, evidently, until the arbitrator thought it was a counterclaim. You didn't think it was a counterclaim. You never posed it as a counterclaim. Right. But the case law, both in Metro Media as well as in Brockwell and in Witham, which is the New Jersey State Court, say that if the issue is out there, if the issue has been briefed, both parties have had opportunities to attack it, to brief it, to present evidence. That's the point. Mr. Lurie says we didn't have an opportunity. But that's not true. Had it been framed as a counterclaim, there are things we could have and would have said in response. And I guess we don't know that, and that's why I asked you what I asked him. If we really thought that the arbitrator got it wrong, is the right thing for this to go back to the arbitrator instead of to have the district court modify it? I agree. It should go back to the arbitrator, yes. Thank you very much. Thank you. Thank you to both counsel for well-presented arguments, and we'll take the matter under advisement. Thank you. Thank you.